IN THE MATTER OF THE ESTATE OF RUTSEN SUCKLEY,
DECEASED, IN ACCOUNTING BY THE EXECUTORS AND TRUSTEES.

*Statute of distribution — no representation after children of brothers and sisters.*

Where an intestate dies unmarried, leaving him surviving, as his next of kin, a
brother and sister and four grandchildren of a deceased half-brother, *held*, that
the personal estate should be distributed between the brother and sister, and
that the grandchildren of the deceased brother had no interest therein.

APPEAL from the decree of the surrogate of Dutchess county.
directing a distribution of the estate of Rutsen Suckley, deceased.

*Lewis L. Delafield*, for the appellants.

*Thompson & Weeks*, for the respondent.

DYKMAN, J.:

Rutsen Suckley died on the 22d day of June, 1875, leaving a last
will and testament, which disposed of all his property to his brother
and sister; but by the death of his sister prior to that of his own,
the one-half of his devise lapsed, and the one-half of his property
remained undisposed of by his will, and so descended to his heirs at
law. The real estate so descending has been partitioned and the

personal property came into the hands of the executors of the will.

The testator left him surviving one brother and one sister and four grandchildren of a deceased half-brother on his father's side. The executors have been called to an account before the surrogate, and he has given the one-half of this fund to the brother of the deceased and the other half to his sister.

From this decree of the surrogate the grandchildren of the deceased brother have appealed, and claim now, as they did before the surrogate, that they are entitled to the one-third of the fund. The distribution of the estate of intestates seems to have been first regulated by the law of the Twelve Tables at Rome. It was then provided that if a *pater familias* died intestate and left no lineal descendants through males under his power to take the succession, his nearest *agnate*, that is, his nearest male relation by his father's side, should have the succession. This rule was changed by the 118th Novel of Justinian, which provided for them ranks of successors. First, descendants; second, ancestors; third, collaterals, and, failing, descendants and ancestors. This novel provided that there come first brothers and sisters of the whole blood, and following them brothers and sisters of the half blood generally. The children of a deceased brother or sister represented their father or mother, and succeeded jointly with the surviving brothers and sisters, but grandchildren did not represent their parents.

Failing, brothers and sisters, or children of brothers and sisters, the blood relation nearest in degree, succeeded, and if there were several in the same degree, they succeeded per capita.

The statute of 22 and 23 Charles II was prepared by Sir Walter Walker, who was a civilian of great eminence, and Sir William Blackstone acknowledges with reluctance that the doctrine and limits of representation, as laid down in this statute, seems to have been principally borrowed from the civil law of Rome. By that statute, as explained by the 29 Charles II, it was enacted that the estates of intestates, except married women, should be distributed, one-third to the widow and the residue in equal proportions to the children, or, if they were dead, to their lineal descendants; if there were no children nor legal representatives, then a moiety went to the widow and a moiety to the next of kindred in equal degrees, and their representatives.

HUN—VOL. XI.    44

If there was no widow, then the whole went to the children, and if there was neither widow nor children, then the whole was distributed among the next of kin in equal degrees, and their representatives; but no representation was admitted among collaterals further than the brothers and sisters of the intestate. Our statute of distribution is founded upon the English statute of Charles, and so far as that portion of it which is involved in this case is concerned, is like it, and provides that no representation shall be admitted among collaterals after brothers' and sisters' children. (§ 90, subd. 11.)

In this case the claimants, instead of being a brother's children, are grandchildren of a half-brother. There is no difficulty, however, on this last point, for our statute provides that relatives of the half blood shall take equally with those of the whole blood in the same degree; but the objection raised to the distribution of any portion of this fund to these grandchildren is that they are one degree beyond the statute.

For the purpose of removing the obstruction thus thrown in the way of these grandchildren, they refer to the fifth subdivision of the same section of the statute, which provides that, in case there be no widow and no children and no representatives of a child, then the whole surplus shall be distributed to the next of kin in equal degree to the deceased and the legal representatives.

The case at bar, in its facts, falls within this subdivision of the statute, and the contention is that it must be controlled by it, and but for the eleventh subdivision of the section, above quoted, the proposition would be unanswerable, for, beyond all doubt, if the statute had stopped here, these grandchildren of the deceased brother of the intestate would have taken. To give this eleventh subdivision of this section the full force of its intention, however, it must be held to cut off all representation among collaterals, with a single exception in favor of brothers' and sisters' children.

The reason for this statutory rule is not satisfactory. It has been supposed to have had its origin in the 118th Novel of Justinian, which elevated the brothers and sisters to the first degree, and so gave them a preference over grandparents, who stand in the second degree; but how this can be applied to the case of brothers' and sisters' children is not so easily perceived.

It is not necessary, however, to find out the reason for this statutory rule, as it is more important to find the legislative intent than to find the reason which induced and controlled it.   If there was any difficulty in this case on principle there is such abundant authority on the question as to preclude all hesitation.   The English statute has been frequently under consideration, and has always been construed so as to exclude all collateral representation beyond brothers' and sisters' children.   In considering this statute Chancellor Kent, in his Commentaries, vol. 2 [m. p.], 425, says: "As the statute of distribution says that no representation shall be admitted among collaterals after brothers' and sisters' children, it was held in *Pett* v. *Pett* (1 Salk., 250), that a brother's grandchildren could not share with another brother's children.   And, therefore, if the intestate's brother A be dead, leaving only grandchildren, and his brother B be dead, leaving children, and his brother C be living, the grandchildren of A will have no share, and cannot take."   A similar doctrine is held in relation to our own statute, in the case of *Doughty* v. *Stillwell* (1 Bradf. R., 302), and in *Hallett* v. *Hare* (5 Paige, 316).   So far as our researches have extended the English decisions are all the same way ; and though the counsel for the appellants insists that they ought not to have any control in the construction of our statute, yet we think the English statute is substantially like ours; and that those decisions are entitled to great consideration.

In no view of this case, that we can take, can these grandnieces of the intestate be admitted to representation, and the decree of the surrogate must therefore be affirmed, with costs.

Barnard, P. J., and Gilbert. J., concurred.

Decree of surrogate affirmed, with costs.